KAREN P. HEWITT
United States Attorney
LUELLA M. CALDITO
Assistant U.S. Attorney
California State Bar No. 215953
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7035
Luella.Caldito@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ROBERTO TORRES-HERNANDEZ (1), aka GREGORIO CRUZ-MERINO, <br> MIGUEL MERINO-CALVERO (2), <br><br> Defendants. | CRIM. CASE NO.  08CR1165-JM <br><br> DATE:  May 16, 2008 <br> TIME:  11:00 a.m. <br><br> Before Honorable Jeffrey T. Miller <br><br> GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT TORRES-HERNANDEZ' MOTION TO: <br> (1) COMPEL DISCOVERY <br> (2) PRESERVE AND INSPECT EVIDENCE; AND <br> (3) GRANT LEAVE TO FILE FURTHER MOTIONS. |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Luella M. Caldito, Assistant United States Attorney, and hereby files hereby files its Response in Opposition to defendant Roberto Torres-Hernandez' above-referenced Motions. This Response is based upon the files and records of this case.

**I**

**STATEMENT OF THE CASE**

On April 15, 2008, a federal grand jury in the Southern District of California returned a six count Indictment charging defendants Roberto Torres-Hernandez and Miguel Merino-Calvero with three counts of bringing in illegal aliens for financial gain and aiding and abetting, in violation of Title 8, United States Code, Section 1324 (a)(2)(B)(ii) and Title 18, United States Code, Section 2 and three

counts of transporting and moving illegal aliens within the United States and aiding and abetting, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (v)(II). Defendants were arraigned on the Indictment on April 15, 2007 and pleaded not guilty to the Indictment.

## II

## STATEMENT OF FACTS

**A.   The Smuggling Offense**

On March 27, 2008, agents in the San Diego Sector Smuggling Interdiction Group (SIG) were performing anti-smuggling duties near the State Route 94 checkpoint. The agents were working in plain clothes and unmarked vehicles. At approximately 7:40 a.m., SIG Agent E. Penagos observed a black Chevrolet Tahoe ("the vehicle") traveling eastbound on Japatul Valley Road in Jamul, California. Agent Penagos followed the vehicle as it made a right turn onto Lyons Valley Road. The subject vehicle then made a right turn onto Spirit Trail Road, which is a common loading spot utilized by alien smuggling organizations to pick up illegal aliens after circumventing the State Route 94 checkpoint. This area is approximately 8 miles west of the Tecate, California Port of Entry and 9 miles north of the international boundary between the United States and Mexico.

After Agent Penagos observed the vehicle make a right turn on Spirit Valley Road, Agent Penagos positioned his vehicle on Lyons Valley Road in order to observe any vehicles exiting from Spirit Valley Road. At approximately 7:55 a.m., the subject vehicle returned to the intersection of Spirit Trail and Lyons Valley Road and then made a left turn back on Lyons Valley Road. As Agent Penagos followed the vehicle, he observed that the vehicle was bouncing heavily in the rear. Agent Penagos then requested record checks on the vehicle. The record checks revealed the registered owner as Gregorio Cruz of 305 Franciscan Way in Oceanside, California.

SIG agents then requested the assistance of a marked border patrol unit to conduct a vehicle stop. Agent Miranda responded to the request. At approximately 8:30 a.m., Agent Miranda attempted a vehicle stop by activating his emergency lights and sirens while the vehicle was traveling on Interstate 8. The subject vehicle failed to yield to Agent Miranda. Agent Miranda continued to follow the vehicle for approximately one mile before the pursuit was terminated.

SIG agents continued their surveillance and observed the vehicle weaving in and out of traffic on Interstate 8 for several miles before heading north on Highway 125. The vehicle then took Highway 52 westbound and then traveled north on Interstate 15. On Interstate 15, the vehicle continued to weave in and out of traffic. On several occasions, the subject vehicle almost sideswiped other vehicles that were traveling on Interstate 15.

The subject vehicle then exited interstate at Old Highway 395, which is a common route used by alien smugglers to circumvent the Temecula Checkpoint. As the vehicle exited on Old Highway 395, it began to slow its speed. At that point, Agent Penagos deployed a Controlled Tire Deflation Device (CTDD), which was successful in deflating the right front tire of the vehicle.

Defendant Roberto Torres-Hernandez was the driver of the vehicle. Defendant Merino-Calvero was the front seat passenger of the vehicle. When agents approached the vehicle, they observed defendant Merino-Calvero in the passenger seat, lying with his seat completely back. Three other individuals were found in the back of the vehicle attempting to conceal themselves from the agents. The agents identified themselves and questioned all the occupants as to their immigration status. All the individuals admitted to being citizens and nationals of Mexico without proper immigration documents to allow them to enter or remain in the United States.

**1.     Defendant Torres-Hernandez' Statement of the Offense**

At approximately 2:42 p.m., defendant Torres-Hernandez was advised of his <u>Miranda</u> rights, which he acknowledged and waived. Torres-Hernandez again stated that he was a citizen of Mexico without any immigration documents.

Defendant Torres-Hernandez stated that an unknown male approached him at a market in Oceanside, California and convinced him to smuggle illegal aliens into the United States. Defendant Torres-Hernandez admitted that he was to be paid $1000 after smuggling the illegal aliens to Los Angeles, California.

Defendant Torres-Hernandez further claimed that the unknown male called him and told him it was time to pick up the aliens. Torres-Hernandez also made contact with the foot guide, via cell phone. The foot guide also informed defendant Torres-Hernandez that they were ready to be picked up. Defendant Torres-Hernandez also admitted that he used his own personal vehicle to smuggle the

1  illegal aliens. Lastly, defendant Torres-Hernandez also identified defendant Miguel Merino-Calvero
2  as the foot guide.

3      **2.**    **Defendant Merino-Calvero's Statement of the Offense**

4      At approximately 6:48 p.m., defendant Merino-Calvero was advised of his <u>Miranda</u> rights,
5  which he acknowledged and waived. Defendant Merino-Calvero again stated that he was a citizen of
6  Mexico without any immigration documents.

7      Defendant Merino-Calvero claimed that he crossed into the United States from Mexico the
8  previous day with eight other individuals. Defendant Merino-Calvero further claimed that after the
9  group had crossed into the United States, the foot guide left him and four other individuals. Defendant
10 and the four other individuals continued their journey and eventually joined another group led by a
11 different foot guide. Once they were outside Alpine, California, the foot guide left defendant Merino-
12 Calvero and the four other individuals behind. Defendant Merino-Calvero claimed that he called his
13 friend Inocensio in Oceanside, California and asked to be picked up. After he made the phone call, a
14 black truck arrived and picked them up. According to defendant Merino-Calvero, the driver of the
15 truck instructed Merino-Calvero to sit in the front passenger seat.

16     Defendant Merino-Calvero claimed that he never met the driver of the load vehicle and that he
17 had never spoken to the driver on the phone. When the agents confronted defendant Merino-Calvero
18 that there were numerous phone calls between his cell phone and defendant Torres-Hernandez' cell
19 phone, defendant Merino-Calvero stated that the driver was bringing him some money to pay his
20 smuggling fee. Lastly, defendant Merino-Calvero identified defendant Torres-Hernandez as the driver
21 of the vehicle.

22     **3.**    **Material Witnesses' Statements**

23     The three illegal aliens in the back of the vehicle were retained as material witnesses –Agustin
24 Cavero-Ortiz, Donaciano Ramirez-Merino and Silverino Ramirez-Mejia. Each provided a videotaped
25 statement, in which they admitted to being citizens and nationals of Mexico with no legal right to enter
26 or reside in the United States. Cavero-Ortiz stated that he was going to pay $1200 to be smuggled to
27 San Diego, California. Ramirez-Merino stated that he was going to pay $1000 to be smuggled to
28 Greenfield, California. Ramirez-Mejia was going to pay an unknown amount to be smuggled into the

United States. All three individuals identified defendant Torres-Hernandez as the driver of the vehicle that picked them up and defendant Merino-Calvero as their foot guide.

### III

### ARGUMENT

**A.    Motion to Compel Discovery**

The United States has and will continue to fully comply with its discovery obligations. To date, the United States has produced 130 pages of discovery to defendants' counsel including a DVD containing the defendants' post-arrest statements and the statements of the material witnesses. As of today, the United States has received no reciprocal discovery. Counsel believes that all discovery disputes can be resolved amicably and informally in this case. In view of the below-stated position of the United States concerning discovery, it is respectfully requested that no orders compelling specific discovery by the United States be made at this time. The Government has no objection to the preservation of evidence for a reasonable time period.

1.    Defendant's Statements

The United States recognizes its obligation under Federal Rules of Criminal Procedure ("Rules") 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant any written statements and the substance of Defendant's oral statements. The United States has produced all of Defendant's statements that are known to the undersigned Assistant U.S. Attorney at this time. If the United States discovers additional oral or written statements that require disclosure under the relevant Rules, such statements will be promptly provided to Defendant.

2.    Defendant's Prior Record

The United States has provided Defendant with a copy of Defendant's known prior criminal record under Rule 16(a)(1)(D). See United States v. Audelo-Sanchez, 923 F.2d 129, 130 (9th Cir. 1990). Should the United States determine that there are any additional documents pertaining to Defendant's prior criminal record, those will be promptly provided to Defendant.

3.    Arrest Reports, Notes, Dispatch Tapes

The United States does not object to the request for arrest reports and has already produced to Defendant all arrest reports known to the United States at this time.

1    The United States has no objection to the preservation of the handwritten notes taken by any of the Government's agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the United States objects to providing Defendant with a copy of any rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

The United States is unaware of a dispatch tape related to this case at this time.

4.    Documents and Tangible Objects

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense or is intended for use by the United States as evidence during its case-in-chief at

1 trial, or was obtained from or belongs to Defendant. The United States, however, need not produce
2 rebuttal evidence in advance of trial. See <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984).

3       5.    <u>Reports of Scientific Tests or Examinations</u>

4 Defendant requests the results of any scientific or other tests or examinations in connection
5 with this case. The United States will disclose to Defendant the name, qualifications, and a written
6 summary of testimony of any expert the United States intends to use during its case-in-chief at trial
7 pursuant to Fed. R. Evid. 702, 703, or 705.

8       6.    <u>Expert Witnesses</u>

9 The United States will comply with Rule 16(a)(1)(G) and provide Defendant with a written
10 summary of any expert testimony that the United States intends to use during its case-in-chief at trial
11 under Federal Rules of Evidence 702, 703 or 705.

12       7.    <u>Brady Material</u>

13 The United States is well aware of and will continue to perform its duty under <u>Brady v.</u>
14 <u>Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), to disclose exculpatory
15 evidence within its possession that is material to the issue of guilt or punishment. Defendant, however,
16 is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused,
17 or which pertains to the credibility of the United States' case. As stated in <u>United States v. Gardner</u>,
18 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty
19 to disclose every bit of information that might affect the jury's decision; it need only disclose
20 information favorable to the defense that meets the appropriate standard of materiality." <u>Id.</u> at 774-775
21 (citation omitted).

22 The United States will turn over evidence within its possession which could be used to properly
23 impeach a witness who has been called to testify.

24 Although the United States will provide conviction records, if any, which could be used to
25 impeach a witness, the United States is under no obligation to turn over the criminal records of all
26 witnesses. <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such
27 information, disclosure need only extend to witnesses the United States intends to call in its case-in-
28

chief. <u>United States v. Gering</u>, 716 F.2d 615, 621 (9th Cir. 1983); <u>United States v. Angelini</u>, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).

The Government already produced a DVD recording of the material witnesses statements. Although the Government does not object to the preservation of any rough notes taken by the interviewing agents, the Government does object to the production of the rough notes at this time.

### 8. Request for Preservation of Evidence

The United States will preserve all evidence to which the Defendants are entitled pursuant to the relevant discovery rules. The United States also has no opposition to a preservation order, should Defendant seek one from this Court.

### 9. Any Proposed 404(b) Evidence

The United States will disclose, in advance of trial, the general nature of any "other bad acts" evidence that the United States intends to introduce at trial pursuant to Federal Rule of Evidence 404(b).

### 10. Witness Addresses

The United States objects to this request as overbroad, unnecessary, and unsupported. Through discovery, Defendant has the names of the officers and agents involved in her arrest. In addition, the United States will provided Defendant with a list of witnesses it intends to call in its trial memorandum. The United States objects to the request for the name and address of witnesses who will not be called by the Government at trial as overbroad and irrelevant.

### 11. Jencks Act Material

The United States will comply with its discovery obligations under the Jencks Act, Title 18, United States Code, Section 3500, and as incorporated in Rule 26.2.

### 12. Informants and Cooperating Witnesses

At this time, the United States is not aware of any confidential informants or cooperating witnesses involved in this case. The Government must generally disclose the identity of informants where: (1) the informant is a material witness, and (2) the informant's testimony is crucial to the

1  defense. <u>Roviaro v. United States</u>, 353 U.S. 53, 59 (1957). If there is a confidential informant involved
2  in this case, the Court may, in some circumstances, be required to conduct an <u>in camera</u> inspection to
3  determine whether disclosure of the informant's identity is required under <u>Roviaro</u>. See <u>United States</u>
4  <u>v. Ramirez-Rangel</u>, 103 F.3d 1501, 1508 (9th Cir. 1997). If the United States determines that there is
5  a confidential informant or cooperating witness who is a material witness with evidence helpful to the
6  defense or essential to a fair determination in this case, the United States will either disclose the
7  identity of the informant or submit the informant's identity to the Court for an <u>in camera</u> inspection.

      13.    <u>Residual Request</u>

The United States has complied with Defendant's residual request for prompt compliance with Defendant's discovery requests and will continue to do so.

**B.**    **<u>Preservation Order</u>**

As stated above, the United States will preserve all evidence to which the defendants are entitled pursuant to the relevant discovery rules.

**C.**    **<u>Motion for Leave to File Further Motions</u>**

The Government opposes this request unless the motion is based upon newly discovered evidence not available to Defendant at the time of the motion hearing.

**IV**

**<u>CONCLUSION</u>**

For the foregoing reasons, the United States requests that Defendant's Motions be denied where opposed.

DATED: May 9, 2008

                                                       Respectfully Submitted,

                                                       KAREN P. HEWITT
                                                     United States Attorney

                                                     <u>/s/ Luella M. Caldito</u>

                                                     LUELLA M. CALDITO
                                                     Assistant U.S. Attorney

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) Criminal Case No. 08CR1165-JM |
|---|---|
| Plaintiff, | ) |
|  | ) **CERTIFICATE OF SERVICE** |
| v. | ) |
|  | ) |
| ROBERTO TORRES-HERNANDEZ (1), | ) |
| aka GREGORIO CRUZ-MERINO, | ) |
| MIGUEL MERINO-CALVERO (2), | ) |
|  | ) |
| Defendants. | ) |

IT IS HEREBY CERTIFIED THAT:

I, LUELLA M. CALDITO, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT TORRES-HERNANDEZ'S MOTION TO (1) COMPEL DISCOVERY; (2) PRESERVE EVIDENCE AND (3) GRANT LEAVE TO FILE FURTHER MOTIONS.
on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**David Peterson, Counsel for Defendant Torres-Hernandez;**
**Mahir Sharif, Counsel for Defendant Merino-Calvero;** and
**Gayle Mayfield, Counsel for the Material Witnesses**

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 9, 2008.

s/ Luella M. Caldito

LUELLA M. CALDITO