KAREN P. HEWITT
United States Attorney
LUELLA M. CALDITO
Assistant U.S. Attorney
California State Bar No. 215953
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7035
Luella.Caldito@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>)<br>ROBERTO TORRES-HERNANDEZ (1),)<br>aka GREGORIO CRUZ-MERINO,)<br>MIGUEL MERINO-CALVERO (2), )<br>)<br>Defendants.)<br>)<br>)<br>_____ ) | CRIM. CASE NO.   08CR1165-JM<br><br>DATE:   May 16, 2008<br>TIME:    11:00 a.m.<br><br>Before Honorable Jeffrey T. Miller<br><br>STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Luella M. Caldito, Assistant United States Attorney, and hereby files the attached statement of facts and memorandum of points and authorities in support of Government's motion for reciprocal discovery.

**I**

**STATEMENT OF THE CASE**

On April 15, 2008, a federal grand jury in the Southern District of California returned a six count Indictment charging defendants Roberto Torres-Hernandez and Miguel Merino-Calvero with three counts of bringing in illegal aliens for financial gain and aiding and abetting, in violation of Title 8, United States Code, Section 1324 (a)(2)(B)(ii) and Title 18, United States Code, Section 2 and three

1  counts of transporting and moving illegal aliens within the United States and aiding and abetting, in
2  violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (v)(II). Defendants were
3  arraigned on the Indictment on April 15, 2007 and pleaded not guilty to the Indictment.

**II**

**STATEMENT OF FACTS**

**A.    The Smuggling Offense**

On March 27, 2008, agents in the San Diego Sector Smuggling Interdiction Group (SIG) were performing anti-smuggling duties near the State Route 94 checkpoint. The agents were working in plain clothes and unmarked vehicles. At approximately 7:40 a.m., SIG Agent E. Penagos observed a black Chevrolet Tahoe ("the vehicle") traveling eastbound on Japatul Valley Road in Jamul, California. Agent Penagos followed the vehicle as it made a right turn onto Lyons Valley Road. The subject vehicle then made a right turn onto Spirit Trail Road, which is a common loading spot utilized by alien smuggling organizations to pick up illegal aliens after circumventing the State Route 94 checkpoint. This area is approximately 8 miles west of the Tecate, California Port of Entry and 9 miles north of the international boundary between the United States and Mexico.

After Agent Penagos observed the vehicle make a right turn on Spirit Valley Road, Agent Penagos positioned his vehicle on Lyons Valley Road in order to observe any vehicles exiting from Spirit Valley Road. At approximately 7:55 a.m., the subject vehicle returned to the intersection of Spirit Trail and Lyons Valley Road and then made a left turn back on Lyons Valley Road. As Agent Penagos followed the vehicle, he observed that the vehicle was bouncing heavily in the rear. Agent Penagos then requested record checks on the vehicle. The record checks revealed the registered owner as Gregorio Cruz of 305 Franciscan Way in Oceanside, California.

SIG agents then requested the assistance of a marked border patrol unit to conduct a vehicle stop. Agent Miranda responded to the request. At approximately 8:30 a.m., Agent Miranda attempted a vehicle stop by activating his emergency lights and sirens while the vehicle was traveling on Interstate 8. The subject vehicle failed to yield to Agent Miranda. Agent Miranda continued to follow the vehicle for approximately one mile before the pursuit was terminated.

1   SIG agents continued their surveillance and observed the vehicle weaving in and out of traffic
2 on Interstate 8 for several miles before heading north on Highway 125. The vehicle then took Highway
3 52 westbound and then traveled north on Interstate 15. On Interstate 15, the vehicle continued to
4 weave in and out of traffic. On several occasions, the subject vehicle almost sideswiped other vehicles
5 that were traveling on Interstate 15.

6   The subject vehicle then exited interstate at Old Highway 395, which is a common route used
7 by alien smugglers to circumvent the Temecula Checkpoint. As the vehicle exited on Old Highway
8 395, it began to slow its speed. At that point, Agent Penagos deployed a Controlled Tire Deflation
9 Device (CTDD), which was successful in deflating the right front tire of the vehicle.

10   Defendant Roberto Torres-Hernandez was the driver of the vehicle. Defendant Merino-Calvero
11 was the front seat passenger of the vehicle. When agents approached the vehicle, they observed
12 defendant Merino-Calvero in the passenger seat, lying with his seat completely back. Three other
13 individuals were found in the back of the vehicle attempting to conceal themselves from the agents.
14 The agents identified themselves and questioned all the occupants as to their immigration status. All
15 the individuals admitted to being citizens and nationals of Mexico without proper immigration
16 documents to allow them to enter or remain in the United States.

17   **1.   Defendant Torres-Hernandez' Statement of the Offense**

18   At approximately 2:42 p.m., defendant Torres-Hernandez was advised of his <u>Miranda</u> rights,
19 which he acknowledged and waived. Torres-Hernandez again stated that he was a citizen of Mexico
20 without any immigration documents.

21   Defendant Torres-Hernandez stated that an unknown male approached him at a market in
22 Oceanside, California and convinced him to smuggle illegal aliens into the United States. Defendant
23 Torres-Hernandez admitted that he was to be paid $1000 after smuggling the illegal aliens to Los
24 Angeles, California.

25   Defendant Torres-Hernandez further claimed that the unknown male called him and told him
26 it was time to pick up the aliens. Torres-Hernandez also made contact with the foot guide, via cell
27 phone. The foot guide also informed defendant Torres-Hernandez that they were ready to be picked
28 up. Defendant Torres-Hernandez also admitted that he used his own personal vehicle to smuggle the

illegal aliens. Lastly, defendant Torres-Hernandez also identified defendant Miguel Merino-Calvero as the foot guide.

**2.   Defendant Merino-Calvero's Statement of the Offense**

At approximately 6:48 p.m., defendant Merino-Calvero was advised of his <u>Miranda</u> rights, which he acknowledged and waived. Defendant Merino-Calvero again stated that he was a citizen of Mexico without any immigration documents.

Defendant Merino-Calvero claimed that he crossed into the United States from Mexico the previous day with eight other individuals. Defendant Merino-Calvero further claimed that after the group had crossed into the United States, the foot guide left him and four other individuals. Defendant and the four other individuals continued their journey and eventually joined another group led by a different foot guide. Once they were outside Alpine, California, the foot guide left defendant Merino-Calvero and the four other individuals behind. Defendant Merino-Calvero claimed that he called his friend Inocensio in Oceanside, California and asked to be picked up. After he made the phone call, a black truck arrived and picked them up. According to defendant Merino-Calvero, the driver of the truck instructed Merino-Calvero to sit in the front passenger seat.

Defendant Merino-Calvero claimed that he never met the driver of the load vehicle and that he had never spoken to the driver on the phone. When the agents confronted defendant Merino-Calvero that there were numerous phone calls between his cell phone and defendant Torres-Hernandez' cell phone, defendant Merino-Calvero stated that the driver was bringing him some money to pay his smuggling fee. Lastly, defendant Merino-Calvero identified defendant Torres-Hernandez as the driver of the vehicle.

**3.   Material Witnesses' Statements**

The three illegal aliens in the back of the vehicle were retained as material witnesses –Agustin Cavero-Ortiz, Donaciano Ramirez-Merino and Silverino Ramirez-Mejia. Each provided a videotaped statement, in which they admitted to being citizens and nationals of Mexico with no legal right to enter or reside in the United States. Cavero-Ortiz stated that he was going to pay $1200 to be smuggled to San Diego, California. Ramirez-Merino stated that he was going to pay $1000 to be smuggled to Greenfield, California. Ramirez-Mejia was going to pay an unknown amount to be smuggled into the

1 United States. All three individuals identified defendant Torres-Hernandez as the driver of the vehicle
2 that picked them up and defendant Merino-Calvero as their foot guide.

### III

### GOVERNMENT'S MOTION

**A.   MOTION FOR RECIPROCAL DISCOVERY**

    **1.   RULE 16(b)**

The United States, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, requests that Defendant permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendant and which Defendant intends to introduce as evidence in his case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendant, which Defendant intends to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends to call as a witness. Because the United States has complied with the defense request for delivery of reports of examinations, the United States is entitled to the items listed above under Rule 16(b)(1) of the Federal Rules of Criminal Procedure. The United States also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the United States receives the discovery to which it is entitled

    **2.   RULE 26.2**

Rule 26.2 of the Federal Rules of Criminal Procedure requires the production of prior statements of all witnesses, except a statement made by Defendant. This rule thus provides for the reciprocal production of <u>Jencks</u> statements.

The time frame established by the rule requires the statement to be provided after the witness has testified. To expedite trial proceedings, the United States hereby requests that Defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set

by the Court. Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and/or reports.

## IV

## **CONCLUSION**

For the foregoing reasons, the United States requests that the Government's Motion be granted.

DATED: May 9, 2008

                              Respectfully Submitted,

                              KAREN P. HEWITT
                              United States Attorney

                              /s/ Luella M. Caldito

                              LUELLA M. CALDITO
                              Assistant U.S. Attorney